The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 6, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: June 6, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:                                         )
                                               )     Case No. 12-13436
BARBARA J. SLADE-LANIER,                       )
        Debtor.                                )
                                               )
_____            )
                                               )     Case No. 13-14328
TOMEKA I. WEAVER,                              )
        Debtor.                                )
                                               )
                                               )     Chapter 13 Proceedings
                                               )
                                               )     Judge Arthur I. Harris

MEMORANDUM OF OPINION[1]

These two Chapter 13 cases are currently before the Court on the debtors'

objections to the claims of real estate tax certificate holders CapitalSource Bank

FBO Aeon Financial, LLC ("CapitalSource") and Woods Cove II, LLC ("Woods

Cove"). The parties initially focused on whether the tax certificate holders were

_____

[1]This opinion is not intended for official publication.

entitled to 18 percent interest on both the *paid* and unpaid principal balance—*i.e.*, the total tax certificate price—despite periodic payments reducing the principal balance over the life of the Chapter 13 plan. Nevertheless, after notice to the parties and supplemental briefing, the Court has determined that the treatment of each of these secured tax claims is governed by the applicable confirmed Chapter 13 plan under 11 U.S.C. § 1327(a). For the reasons that follow, the Court sustains the debtors' claim objections in part. In Case No. 12-13436, *Barbara J. Slade-Lanier*, CapitalSource has an allowed secured claim in the amount of $10,234.59, with postpetition interest accruing at the rate of 18% on the unpaid principal balance, plus an allowed unsecured claim in the amount of $2,362.10. In Case No. 13-14328, *Tomeka I. Weaver*, Woods Cove has an allowed secured claim in the amount of $11,120.98, with postpetition interest accruing at the rate of 18% on the unpaid principal balance, plus an allowed unsecured claim in the amount of $2,875.78.

JURISDICTION

The Court has jurisdiction over these proceedings. 11 U.S.C. § 1334(b). An objection to a claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B), which falls within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Ohio state law provides a procedure whereby Ohio counties may generate revenue by selling tax certificates on real estate parcels with delinquent property taxes. Ohio Rev. Code Ann. § 5721.30, *et seq*. Certificate holders purchase the county's right to payment on delinquent property taxes for a real estate parcel. The county receives necessary revenue, and the certificate holder generally receives a first-priority lien on the real estate parcel. All of the tax certificates held by creditors CapitalSource and Woods Cove in these cases came from negotiated sales with Cuyahoga County pursuant to Ohio Revised Code § 5721.33.

A.    *Case No. 12-13436, Barbara J. Slade-Lanier*

On October 27, 2009, CapitalSource purchased a negotiated sale tax certificate for tax years 2006, 2007, and 2008 on a real estate parcel that is debtor Barbara J. Slade-Lanier's principal residence. On September 1, 2010, CapitalSource purchased an additional negotiated sale tax certificate with respect to the same parcel for the 2009 tax year.

On May 4, 2012, Barbara J. Slade-Lanier filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule E - Creditors Holding Unsecured Priority Claims (ECF No. 1, at 18), the debtor listed a $9,264.59 tax

3

lien claim associated with CapitalSource.  The debtor's creditor address matrix listed an address for CapitalSource's counsel in Chicago, Illinois.  ECF No. 1, at 40.

On June 7, 2012, the day after the meeting of creditors, counsel for CapitalSource filed a secured claim for $12,596.69 with 18% interest.  The debtor's original Chapter 13 Plan (ECF No. 9) provided for the payment of CapitalSource's claim as an unsecured priority claim in the amount of $9,264.59 with no interest.  The original Chapter 13 plan did not provide for CapitalSource's secured claim.  Despite having received notice of the plan, CapitalSource did not participate in the plan confirmation process, and the Court confirmed the debtor's original Chapter 13 plan on August 2, 2012.

Less than three weeks later, on August 20, 2012,  CapitalSource filed a Motion (ECF No. 28) to dismiss the debtor's case.  CapitalSource argued that the debtor committed a material default with respect to the confirmed Chapter 13 Plan (ECF No. 23) when the debtor failed to pay postpetition real estate property taxes and, as a result, incurred new debt.  The debtor filed a timely Objection. ECF No. 30.  On September 27, 2012, the Court held a hearing on the matter.  At the hearing, counsel for CapitalSource withdrew the Motion to Dismiss.

On April 29, 2013, the debtor filed a Motion to Modify (ECF No. 44) the

4

confirmed Chapter 13 plan. CapitalSource, through counsel, received notice of the Motion to Modify by first class mail and email. The Motion to Modify altered the treatment of CapitalSource's claim. As opposed to the original plan, which provided for the treatment of the CapitalSource's claim as a priority claim, the modified plan provides for CapitalSource's secured claim to be paid $10,234.59 at 18% interest, with a monthly payment by the Chapter 13 trustee of $312.

Paragraph 3B of the debtor's modified Chapter 13 plan provides:

> Trustee shall pay the monthly amount to creditors up to the amount specified below to be paid through the plan. The portion of any allowed claim that exceeds the amount to be paid through the plan shall be treated as an unsecured claim.

CapitalSource never objected to the debtor's Motion to Modify.

Pursuant to 11 U.S.C. §§ 1329 and 1325(a), the Court granted the debtor's Motion to Modify on June 4, 2013. ECF No. 49. The confirmed plan provides that any portion of CapitalSource's claim exceeding $10,234.59 with 18% interest shall be treated as an unsecured claim. Under the confirmed plan, unsecured creditors are expected to receive a dividend of 1%.

B.  *Case No. 13-14328, Tomeka I. Weaver*

On November 16, 2011, Woods Cove purchased a negotiated sale tax certificate for tax years 2008, 2009, and 2010 on a real estate parcel that is debtor

Tomeka I. Weaver's principal residence. On September 13, 2012, Woods Cove purchased an additional negotiated sale tax certificate with respect to the same parcel for the 2011 tax year.

On June 17, 2013, Tomeka Weaver filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule D - Creditors Holding Secured Claims (ECF No. 1, at 13–14), the debtor listed tax liens associated with Woods Cove. On the Statement of Financial Affairs (ECF No. 1, at 32), the debtor disclosed that she is a defendant in a pending foreclosure lawsuit filed by Woods Cove in the Cuyahoga County Court of Common Pleas. The debtor's creditor address matrix listed two addresses for Woods Cove: a corporate address in Beverly Hills, California, and an address for Woods Cove's local counsel in Cleveland, Ohio. ECF No. 1, at 41–43.

Counsel for Woods Cove filed a Notice of Appearance (ECF No. 13) on July 11, 2013, six days before the meeting of creditors. Woods Cove filed a claim for $24,005.65 on August 8, 2013, and, on August 27, 2013, amended the claim to specify that Woods Cove was due 18% interest. The debtor's Chapter 13 Plan (ECF No. 12) provided for the treatment of Woods Cove's secured claim. The debtor listed a debt to Woods Cove in the amount of $11,120.98 with 18% interest, and the debtor proposed for the Chapter 13 trustee to make monthly

6

payments of $270 to Woods Cove. Paragraph 3B of the debtor's Chapter 13 plan provides:

> Trustee shall pay the monthly amount to creditors up to the amount and interest rate as specified below. The portion of any allowed claim that exceeds the amount to be paid through the plan shall be treated as an unsecured claim. Unless the court orders otherwise, upon confirmation, the amount, interest rate and monthly payment specified below will be binding under 11 U.S.C. § 1327.

ECF No. 23, at 4.

Woods Cove received notice of the debtor's Chapter 13 plan and the debtor's proposed treatment of Woods Cove's claim. ECF No. 12, at 1–2. Woods Cove never objected to confirmation of the debtor's plan. Pursuant to 11 U.S.C. § 1325(a), the Court confirmed the debtor's Chapter 13 plan on December 2, 2013. ECF No. 23. The confirmed plan provides that any portion of Woods Cove's claim exceeding $11,120.98 with 18% interest shall be treated as an unsecured claim. Unsecured creditors are expected to receive a dividend of 0%—nothing—in the debtor's case.

## DISCUSSION

"Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150 (1991) (citations omitted). A

7

Chapter 13 debtor "may submit for the bankruptcy court's confirmation a plan that 'modif[ies] the rights of holders of secured claims . . . or . . . unsecured claims,' § 1322(b)(2), and that 'provide[s] for the payment of all or any part of any [allowed] claim,' § 1322(b)(6)." *Id.* (alterations in original) (footnote omitted).

"The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). A bankruptcy court order confirming a debtor's Chapter 13 plan is a final judgment. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269, 130 S. Ct. 1367 (2010). Even if a bankruptcy court order confirming a debtor's Chapter 13 plan violates the Bankruptcy Code, the order is a final judgment. *Id.* A party who wishes to challenge a bankruptcy court's final judgment may timely appeal the final judgment, *i.e.*, obtain direct review, or, if warranted under the circumstances, timely file a motion pursuant to Rule 60(b). *Espinosa*, 559 U.S. at 269–70; *see* Fed. R. Civ. P. 60(b).

After the parties' initial briefing, the Court's review of the record in each of these two cases suggested that the parties may in fact be bound by the applicable confirmed Chapter 13 plan under 11 U.S.C. § 1327(a) and *Espinosa*. Accordingly, the Court gave the parties an opportunity to file supplemental briefs in support of

their respective positions. *Cf.* Fed. R. Civ. P. 56(f) (as amended in 2010, court must give notice and reasonable time to respond if it intends to grant summary judgment on grounds not raised by a party).

A.    *Due process*

In determining whether creditors CapitalSource and Woods Cove are bound by the debtors' confirmed Chapter 13 plans, the Court must determine whether these creditors received due process. If the Court's final judgment violated a party's right to due process the party may seek relief because "the judgment is void" pursuant to Rule 60(b)(4). Fed. R. Civ. P. 60(b)(4); *Espinosa*, 559 U.S. at 271. *See generally Lampe v. Kash*, 735 F.3d 942 (6th Cir. 2013).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950). "Lack or inadequacy of notice of a bankruptcy prevents a claimant from having the opportunity to participate meaningfully in a bankruptcy proceeding to protect his or her claim." *Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012) (citing 11 U.S.C. § 342(a)). While creditors in bankruptcy proceedings generally receive

9

notice by first class mail, "[d]ue process does not always require formal, written notice of court proceedings; *informal actual notice* will suffice." *Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (emphasis added). "Another way to think about it is to ask how someone 'desirous of actually informing' the creditor would go about reaching him." *Lampe*, 735 F.3d at 943–44 (quoting *Jones v. Flowers*, 547 U.S. 220, 229, 126 S. Ct. 1708 (2006)).

The Bankruptcy Code recognizes a creditor's right to due process. *See* 11 U.S.C. §§ 102(1), 342(a), 523(a). Bankruptcy Code § 523 provides, in pertinent part:

> (a)   A discharge under . . . [Chapter 13] of this title does not discharge an individual debtor from any debt–
>
> > (3)   neither listed nor scheduled under section 521(a)(1) of the title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–
> >
> > > (A)   if such debt is not . . . [a debt related to fraud or willful and malicious injury] timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

11 U.S.C. § 523. In general, a Chapter 13 debtor may receive a discharge as to a debt if the creditor received notice of the bankruptcy in time to file a claim.

Bankruptcy Rule 3002 provides a deadline—the bar date—for a creditor to timely file a proof of claim; however, the bar date does not apply to secured

10

creditors.  *See* Fed. R. Bankr. P. 3002.  A proof of claim must be filed by or on behalf of a secured creditor in order for the creditor to have an allowed claim. 11 U.S.C. § 502(a); *see* Fed. R. Bankr. P. 3002.  Secured creditors who want to partake in the distribution may do so, or other parties may file a protective proof of claim on the secured creditor's behalf.

While the bankruptcy process must afford creditors due process, creditors who sleep on their rights may lose them.  *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 450 (6th Cir. 2009) (stating that a secured creditor's failure to object to the debtor's proposed treatment of the creditor's allowed secured claim constitutes such creditor's "acceptance of the plan" for the purpose of 11 U.S.C. § 1325(a)(5)); *Pence*, 905 F.2d at 1109 ("[The creditor] was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.").  It is undisputed that CapitalSource and Woods Cove received due process in these cases.  Both creditors received notice of the relevant bankruptcy filings and an opportunity to object.

B.    *Determining the amount of an ad valorem tax*

CapitalSource and Woods Cove cite 11 U.S.C. § 505(a)(2) for the proposition that the Court may not allow the debtors to pay less in a Chapter 13 plan than the debtors would have to pay under an Ohio state law tax certificate

11

redemption.  Section 505(a)(2) provides, in pertinent part:

> (2) The court may not so determine–
>
>      . . . .
>
>> (C) the amount or legality of any amount arising in connection
>> with an ad valorem tax on real or personal property of the
>> estate, if the applicable period for contesting or redetermining
>> that amount under applicable nonbankruptcy law has expired.

11 U.S.C. § 505(a)(2).  There is no dispute that the applicable periods for

contesting or redetermining the amounts of the taxes at issue have expired.

A confirmed plan may be a binding final judgment notwithstanding that it

violates a provision of the Bankruptcy Code.  *Espinosa*, 559 U.S. at 270 ("A

judgment is not void, for example, simply because it is or may have been

erroneous.") (citations omitted) (internal quotations omitted).  There is a good

argument, however, that § 505(a)(2) defines part of the bankruptcy court's subject-

matter jurisdiction.  *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 284–85 (6th Cir.

2001); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio

Co.*), 930 F.2d 1132, 1138 (6th Cir. 1991).  Accordingly, it is appropriate for the

Court to consider whether it has subject-matter jurisdiction to rule on the debtors'

claim objections.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).  The Court also

considers whether the Chapter 13 confirmation orders are void pursuant to

Rule 60(b)(4) for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 60(b)(4);

12

*Espinosa*, 559 U.S. at 271. *But see Kontrick v. Ryan*, 540 U.S. 443, 455, n.9, 124 S. Ct. 906 (2004) ("Even subject-matter jurisdiction . . . may not be attacked collaterally.").

The tax certificates at issue in these cases represent the right to collect ad valorem taxes. In their most-recent briefs, the debtors argued that the tax certificates at issue are not ad valorem in nature. The debtors are incorrect. The tax certificates at issue represent ad valorem—Latin for "according to value"—tax claims. Real estate property taxes under Ohio law are ad valorem taxes, and Ohio law provides that the delinquent taxes may be transferred to a tax certificate purchaser in a negotiated sale. Ohio Rev. Code Ann. § 5721.33(G) ("Upon issuing the tax certificates, the delinquent taxes that make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder or holders."); *cf. In re Cortner*, 400 B.R. 608, 612–13 (Bankr. S.D. Ohio 2009) (citing analogous provisions for tax certificates sold at public auction).

At the same time, the Court is not determining "the amount or legality of any amount arising in connection with an ad valorem tax" by ruling on the debtors' claim objections. 11 U.S.C. § 505(a)(2)(C); *see In re Read*, 692 F.3d 1185 (11th Cir. 2012) (holding a bankruptcy filing does not extend the

13

period for a debtor to contest a valuation of real property for the purpose of Florida real estate taxes); *In re Village at Oakwell Farms, Ltd.*, 428 B.R. 372 (Bankr. W.D. Tex. 2010) (discussing whether the bankruptcy court had jurisdiction to review or determine a tax assessment). The parties do not dispute the valuations of the properties at issue, the proper amount of any assessment, or the underlying amount of the original taxes in these cases. The Court is not determining the amount of a tax or an amount in connection with a tax, *e.g.*, the property's valuation for assessment purposes. The Court is determining the appropriate treatment of a tax claim, which happens to be a secured claim, in a Chapter 13 case. Under the creditors' reading of § 505(a)(2)(C), bankruptcy courts should be precluded from disallowing any amount of an ad valorem tax claim; however, § 505(a)(2) states "[t]he court may not so *determine* . . . the amount or legality of any amount arising in connection with an ad valorem tax . . . ." 11 U.S.C. § 505(a)(2)(C) (emphasis added). Under the creditors' reading, the Court would be precluded from disallowing *or allowing* any amount of an ad valorem tax claim, which would significantly impair the efficacy of the bankruptcy process.

The creditors' reading of § 505(a)(2) is incorrect. Section 505 precludes a bankruptcy court from determining the amount of an ad valorem tax, but it does

14

not prevent a bankruptcy court from determining the amount of a tax claim,

including tax claims which are ad valorem in nature.  The word "claim" does not

appear in § 505(a)(2)(C).  The creditors cite no court which has adopted their

interpretation of § 505(a)(2)(C), and the plain language of 11 U.S.C.

§ 505(a)(2)(C) refers to determining the amount owed on an ad valorem tax, not

determining the allowed amount and treatment of a tax claim.

 CapitalSource cites *In re Powell-Garvey Co.*, No. 05-43338,

2006 WL 6885807, at *2 (S.D. Ga. June 5, 2006), for the proposition that "the

language of § 505(a)(2)(C) is 'very broad.' "  Notably, however, the court in

*Powell-Garvey* considered § 505(a)(2)(C) in the context of a debtor's request to

reconsider a county's valuation of real property and the resulting property tax

assessment.  *Powell-Garvey*, 2006 WL 6885807, at *2–3 ("[I]t is clear that what

[the debtor] is asking this Court to do is to make a determination of its liability

based on the vastly lower valuation . . . rather than the county appraisal figures.").

The *Powell-Garvey* decision does not support CapitalSource's position; if

anything, it weakens it.

 The Court has subject-matter jurisdiction to decide these claim objections,

and the Court's final judgments confirming the debtors' Chapter 13 plans are not

void for lack of subject-matter jurisdiction.  *See* Restatement (Second) of

Judgments § 12 (1982).

C.   *The allowed amount of a tax certificate claim*

In order to rule on the debtors' claim objections, the Court must consider what amounts CapitalSource and Woods Cove were entitled to receive on the debtors' respective petition dates. The Court determines the underlying right to payment according to relevant state law. Under Ohio law, the parcel owner must fully pay the certificate purchase price and any accrued interest, or the certificate holder may foreclose on the property. Ohio Rev. Code Ann. §§ 5721.37, 38.

Before a tax certificate holder initiates foreclosure proceedings, a person entitled to redeem the parcel "may redeem the parcel by paying to the county treasurer an amount equal to the total of the certificate redemption prices of all tax certificates respecting that parcel." Ohio Rev. Code Ann. § 5721.38(A). For tax certificates subject to a negotiated sale,

> "certificate redemption price" means the amount equal to the sum of the following:
>
> (1) The certificate purchase price;
>
> (2) Interest accrued on the certificate purchase price at the certificate rate of interest from the date on which a tax certificate is delivered through and including the day immediately preceding the day on which the certificate redemption price is paid;

16

(3) The fee, if any, charged by the county treasurer to the purchaser of the certificate under division (J) of section 5721.33 of the Revised Code;

(4) Any other fees charged by any county office in connection with the recording of tax certificates.

Ohio Rev. Code Ann. § 5721.30(F).

After a certificate holder initiates foreclosure proceedings, but before a foreclosure sale is confirmed, a person entitled to redeem the parcel may redeem the parcel by paying to the county treasurer the sum of the following amounts:

(1) The amount described in division (A) of this section;

(2) Interest on the certificate purchase price for each tax certificate sold respecting the parcel at the rate of eighteen per cent per year for the period beginning on the day on which the [the foreclosure proceeding was initiated] and ending on the day the parcel is redeemed under this division;

(3) An amount equal to the sum of the county prosecuting attorney's fee under division (B)(3) of section 5721.37 of the Revised Code plus interest on that amount at the rate of eighteen per cent per year beginning on the day on which the payment was submitted by the certificate holder and ending on the day the parcel is redeemed under this division. If the parcel is redeemed before the complaint has been filed, the prosecuting attorney shall adjust the fee to reflect services performed to the date of redemption, and the county treasurer shall calculate the interest based on the adjusted fee and refund any excess fee to the certificate holder.

(4) Reasonable attorney's fees in accordance with section

17

5721.371 of the Revised Code if the certificate holder retained a private attorney to foreclose the lien;

(5) Any other costs and fees of the proceeding allocable to the certificate parcel as determined by the court or board of revision.

Ohio Rev. Code Ann. § 5721.38(B). In the debtors' cases, the certificate holders filed foreclosure actions, so the amounts of the certificate holders' prepetition claims are determined pursuant to Ohio Revised Code § 5721.38(B). Notably, the certificate rate of interest for each tax certificate in these cases is 18%, which is the same interest rate required to redeem the parcels after a foreclosure has been filed. Ohio Rev. Code Ann. § 5721.38(B)(2); *cf. In re Bowers*, 506 B.R. 249, 251 (B.A.P. 6th Cir. 2013) (certificate rate of interest was only 0.25%). Applying the same interest rate simplifies the Court's calculations for the creditors' prepetition claims, which are described below in Parts F and G.

D.     *Applicable interest rate*

The debtors and creditors agree that the interest rate applicable to these claims is 18%. The parties disagree about what method the Court should use to calculate interest. The debtors contend that interest should only be paid on the unpaid principal balance as the debtors pay down the certificate purchase prices. CapitalSource and Woods Cove argue that they should be paid interest on the full

18

purchase price of each certificate until the certificate redemption price is paid in full. In other words, the creditors argue that interest accrues on both the paid and unpaid principal balance—*i.e.*, the full certificate purchase price—so long as a cent of the certificate redemption price remains unpaid.

Absent the debtors' Chapter 13 bankruptcy cases, the position taken by CapitalSource and Woods Cove might make sense. Ohio law does not provide for cancellation of a tax certificate until the tax certificate has been redeemed in full. Ohio Rev. Code Ann. § 5721.38(B). In these cases, however, the confirmed Chapter 13 plans do not provide for the extraordinary treatment the creditors argue they are entitled to under state law. Additionally, even if 11 U.S.C. § 511 could be interpreted as requiring that each tax claim be paid 18% interest on both the paid and unpaid principal balances despite periodic payments to the creditor reducing the principal over the life of the Chapter 13 plan, section 511 would not help the creditors because they failed to timely object to confirmation of the debtors' Chapter 13 plans. *Espinosa*, 559 U.S. at 270.

The confirmed Chapter 13 plans in these two cases each specify a principal amount and a fixed rate of interest for the tax creditors' secured claims. The secured creditors are bound by the terms of the respective confirmed plans. For example, in the *Slade-Lanier* case, the confirmed plan as modified (and not

19

objected to by CapitalSource) provides for the secured claim of CapitalSource to be paid $10,234.59, plus interest at the rate of 18 percent in monthly payments of $312.00. ECF No. 44 at 6; ECF No. 49. "The portion of any allowed claim that exceeds the amount to be paid through the plan shall be treated as an unsecured claim." *Id.* Nothing in either confirmed plan specifies that the 18 percent interest is to be paid on both the paid and unpaid balance— *i.e.*, the total tax certificate price—despite periodic payments to the creditor reducing the principal balance over the life of the Chapter 13 plan.

Indeed, although not expressly stated in the plans, the plain meaning of the 18 percent interest provision in these confirmed Chapter 13 plans is that interest accrues and is paid only on the unpaid balance. This is consistent with the basic concepts of present value contained in relevant provisions of the Bankruptcy Code and recognized by the Supreme Court in case law analyzing these provisions. *See*, *e.g.*, 11 U.S.C. § 1325(a)(5)(B)(ii) ("the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"); *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004); *In re Pokrzywinski*, 311 B.R. 846, 848–49 (Bankr. E.D. Wisc. 2004) (noting that all three opinions in *Till* analyzed the appropriate interest rate required under § 1325(a)(5)(B)(ii) on a present value basis). This plain meaning is also

20

consistent with the Truth in Lending Act, which defines "annual percentage rate" as a rate which will yield a sum equal to the amount of the finance charge when it its applied to the unpaid balances of the amount financed . . ." *See Pokrzywinski*, 311 B.R. at 849–50 (citing 15 U.S.C. §1602). That consistency is important. The treatment the tax certificate holders received under the local form Chapter 13 plan is the treatment received by all claims secured by real property where the debtor seeks to modify the rights of the secured claim holder. A common example of such a claim secured by real property is a note and mortgage subject to the Truth in Lending Act. The three Cleveland bankruptcy judges and the Chapter 13 trustee all interpret the local form plan to provide secured creditors with interest based on the unpaid principal. There would be a marked difference if the Court accepted the tax certificate holders' interpretation of the plan; if debtors must pay secured claim holders interest on both the paid and unpaid principal, the effective interest rate would be close to double the stated rate.

Were the plans to be interpreted as requiring 18 percent interest on both the paid and unpaid principal—*i.e.*, 18 percent interest on the total tax certificate price until the last cent of principal were paid in full—the result would yield much more than the present value of such claim, assuming equal monthly payments over three to five years. *Cf. Rake v. Wade*, 508 U.S. 464, 472 n.8, 113 S. Ct. 2187 (1993):

21

When a claim is paid off pursuant to a stream of future payments, a creditor receives the "present value" of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments. This generally involves a determination of an appropriate discount rate and a discounting of the stream of deferred payments back to the present dollar value of the claim at confirmation.

*Accord Pokrzywinski*, 311 B.R. at 849 (discussing Justice Scalia's dissent in *Till*, 541 U.S. at 501 n.8, in which Justice Scalia calculates that the 1.5% risk premium adopted by the plurality in *Till* would be about $60, given that: (a) the creditor's $4,000 secured claim would be repaid by the end of the second year; (b) the *average unpaid balance over the two years* would be $2,000; and (c) total interest premium would be "1.5% x 2 x $2,000 = $60").  To use Justice Scalia's example, if the plan in *Till* were to pay a 1.5% premium based, not on the average unpaid balance, but on the full $4,000 principal for two years, the total interest premium would be $120, or *double* the amount described in *Till*:  1.5% x 2 x $4,000 = $120.

Accordingly, the Court interprets the pertinent provisions of the debtors' confirmed plans as paying interest *only on the unpaid balance* of the creditors' secured claims, the same as all other secured creditors.

E.    <u>Modification of a secured claim</u>

CapitalSource and Woods Cove, as Ohio tax certificate holders, hold

22

secured claims. They argue that the debtors' Chapter 13 plans violated

§ 1322(b)(2), which provides that a Chapter 13 plan may "modify the rights of

holders of secured claims, other than a claim secured only by a security interest in

real property that is the debtor's principal residence . . . ." The tax certificate

holders have secured claims that are secured only by real property that is the

debtor's principal residence; however, the tax certificate holders do not have a

*security interest*, as defined by the Bankruptcy Code. *See* 11 U.S.C. § 101(51); *In*

*re Lamont*, 740 F.3d 397, 409 (7th Cir. 2014) "The term 'security interest' means

lien created by an agreement." 11 U.S.C. § 101(51). "[R]eal estate tax liens or

liens provided by the Ohio statutes relating to the sale of real estate tax certificates

are not security interests because they are not liens 'created by agreement.' " *In re*

*McLemore*, 426 B.R. 728 (Bankr. S.D. Ohio 2010) (citing 11 U.S.C. § 101(51);

*Cortner*, 400 B.R. at 611) (citation omitted). Accordingly, the debtors may

modify the rights of the tax certificate holders in their Chapter 13 plans under

11 U.S.C. § 1322(b)(2), provided they meet the other requirements for treatment of

secured claims under 11 U.S.C. § 1325(a)(5).

Woods Cove makes an additional argument regarding the impact of the

confirmed Chapter 13 plan on its claim:

Even if the Creditor is bound by the confirmation of the plan, the

23

> completion of the plan cannot discharge the *in rem* debt, because the bankruptcy court cannot lower the amount owed on the certificates. This means that, while Creditor cannot collect the full amount of the certificate through the plan, it may foreclose the debt after the termination of the bankruptcy.

Case No. 13-14328, ECF No. 33, at 2. Chapter 13 of the Bankruptcy Code allows debtors to "modify the rights of holders of allowed secured claims." 11 U.S.C. § 1322(b)(2); *In re Lane*, 280 F.3d 663 (6th Cir. 2002); *cf. In re City of Detroit, Mich.*, 504 B.R. 97, 150 (Bankr. E.D. Mich. 2013) (stating that the Bankruptcy Code permitted impairment of creditors' state law rights to payment even when the Michigan Constitution provided that the rights were not subject to impairment). Creditors may not take actions that violate the terms of a confirmed plan.

F.    *Case No. 12-13436, Barbara J. Slade-Lanier*

In the case of debtor Barbara J. Slade-Lanier, creditor CapitalSource received notice of the debtor's bankruptcy case and filed a proof of claim. CapitalSource received notice of the debtor's modified Chapter 13 plan. The notice CapitalSource received satisfied due process. CapitalSource had an opportunity to object to the debtor's modified Chapter 13 plan, including the debtor's proposed treatment of CapitalSource's allowed secured claim. CapitalSource failed to object. The Court approved the modification of the debtor's confirmed Chapter 13 plan. *See* 11 U.S.C. § 1329(b)(2) ("The plan as

24

modified becomes the plan unless, after notice and a hearing, such modification is disapproved."). The debtor's confirmed plan (as modified) is a final judgment and binds the debtor and creditors. 11 U.S.C. § 1327(a). Accordingly, the Court sustains the debtor's objection to CapitalSource's claim in part. CapitalSource's secured claim shall be allowed in the amount of $10,234.59 with 18% interest as provided under the terms of the confirmed plan. Interest on the claim shall be calculated based on the unpaid principal balance, and the monthly payment by the Chapter 13 trustee to CapitalSource shall be $312.

The confirmed plan's treatment of CapitalSource's claim also requires the Court to consider the amount, if any, by which CapitalSource's allowed claim exceeds its allowed secured claim. Ordinarily, the Court only bifurcates allowed claims into secured and unsecured claims if the creditor is undersecured. CapitalSource is an oversecured creditor, but the confirmed plan specifies that the portion of CapitalSource's allowed claim which exceeds the amount to be paid on CapitalSource's secured claim through the plan shall be treated as an unsecured claim.

CapitalSource filed a proof of claim in this case for $12,596.69, which exceeds the amount of its allowed secured claim—$10,234.59—by $2,362.10. Under Ohio law, as of the petition date CapitalSource was entitled to recover

(1) the certificate purchase prices, totaling $6,633.75; (2) prepetition interest—*i.e.*, 18% simple interest on the certificate purchase prices from the dates the certificates were sold to the petition date, totaling $2,807.94; and (3) attorney's fees and costs, without interest, totaling $3,155. CapitalSource's total allowed claim is $12,596.69. Therefore, according to the terms of the confirmed plan, CapitalSource's allowed secured claim is $10,234.59, and its allowed unsecured claim is $12,596.69 minus $10,234.59, or $2,362.10.

The Court notes that the debtor, too, is bound by the terms of the confirmed plan as modified. Thus, even though interest would normally accrue under Ohio law only on the certificate purchase prices—*i.e.*, $6,633.75—and not on prepetition interest or attorney's fees, the debtor is obligated to pay 18 percent interest on the unpaid principal balance with respect to the $10,234.59 figure specified in section 3B of the debtor's modified confirmed plan.

G. *Case No. 13-14328, Tomeka I. Weaver*

In the case of Tomeka I. Weaver, creditor Woods Cove received notice of the debtor's bankruptcy case and filed a claim. Woods Cove received notice of the debtor's Chapter 13 plan. The notice Woods Cove received satisfied due process. Woods Cove had an opportunity to object to the debtor's Chapter 13 plan, including the debtor's proposed treatment of the Woods Cove's allowed secured

26

claim. Woods Cove failed to object. Accordingly, the Court confirmed the debtor's Chapter 13 plan. The debtor's confirmed plan is a final judgment and binds the debtor and creditors. 11 U.S.C. § 1327(a). Accordingly, the Court sustains the debtor's objection to Woods Cove's claim in part. Woods Cove's secured claim shall be allowed in the amount of $11,120.98 with 18% interest as provided under the terms of the confirmed plan. Interest on the claim shall be calculated based on the unpaid principal, and the monthly payment by the Chapter 13 trustee to Woods Cove shall be $270.

The confirmed plan's treatment of Woods Cove's claim also requires the Court to consider the amount, if any, by which Woods Cove's allowed claim exceeds its allowed secured claim.

Woods Cove filed a proof of claim in this case for $24,005.65, which exceeds the amount of its allowed secured claim—$11,120.98—by $12,885.67. Under Ohio law, as of the petition date Woods Cove was entitled to recover (1) the certificate purchase prices, totaling $11,120.98; and (2) prepetition interest—*i.e.*, 18% simple interest on the certificate purchase prices from the dates the certificates were sold to the petition date, totaling $2,875.78. Woods Cove's proof of claim did not contain attorney's fees or costs. Woods Cove's total allowed claim is $13,996.76. Therefore, according to the terms of the confirmed plan,

27

Woods Cove's allowed secured claim is $11,120.98, and its allowed unsecured claim is $13,996.76 minus $11,120.98, or $2,875.78.

CONCLUSION

For the reasons stated above, the treatment of each of these secured tax claims is governed by the applicable confirmed Chapter 13 plan under 11 U.S.C. § 1327(a). The Court sustains the debtors' claim objections in part. In Case No. 12-13436, *Barbara J. Slade-Lanier*, the Court allows CapitalSource's secured claim in the amount of $10,234.59, with postpetition interest accruing at the rate of 18% on the unpaid principal balance, and its unsecured claim in the amount of $2,362.10. In Case No. 13-14328, *Tomeka I. Weaver*, the Court allows Woods Cove's secured claim in the amount of $11,120.98, with postpetition interest accruing at the rate of 18% on the unpaid principal balance, and its unsecured claim in the amount of $2,875.78.

All other relief requested by the debtors, including specific performance and payment of attorney's fees and costs, is denied pursuant to Bankruptcy Rules 3007(b) and 7001.

IT IS SO ORDERED.